[Civ. No. 4676. First Appellate District, Division Two.—October 17, 1923.]

## SALVATORE TERESI, Appellant, v. PAUL L. CAVALA et al., Respondents.

[1] CONTRACT — PURCHASE OF REAL PROPERTY — RECOVERY OF INITIAL PAYMENT — APPROVAL OF CONTRACT—FINDING—EVIDENCE—APPEAL. In an action to recover an initial payment made by plaintiff on the purchase price of real property under a contract entered into by plaintiff, on behalf of a third party, and the owners of said property, subject to the approval of said third party, a finding that the latter approved the sale and the execution of the contract and the payment so made will not be disturbed on appeal where such finding is based on conflicting evidence.

APPEAL from a judgment of the Superior Court of Santa Clara County. J. R. Welch, Judge. Affirmed.

The facts are stated in the opinion of the court.

James M. Thomas, A. M. Free and F. H. Bloomingdale for Appellant.

C. D. Cavallaro, Louis Oneal, William F. James and John R. Jones for Respondents.

LANGDON, P. J.—This appeal is by the plaintiff from a judgment against him in an action in which he sought to recover $5,000 from the defendants. It was alleged that the money became due to the plaintiff because of the following facts: On December 19, 1919, the plaintiff, on behalf of defendant, Antonio Wm. Russo, entered into a written agreement with the defendant Paul L. Cavala, as agent for the defendants S. J. Mascovich and B. L. Mascovich, his wife, subject to the approval of said defendant Antonio Wm. Russo, for the purchase by said defendant Antonio Wm. Russo from said defendants S. J. Mascovich and B. L. Mascovich of a certain tract of land situated in the county of Santa Clara, state of California, consisting of 126 acres of land, for the sum of $135,000. By the terms of this contract $5,000 was to be paid upon the execution and delivery of the agreement and the balance in installments provided for in said agreement. Upon the execution and delivery of the agreement plaintiff paid to defendant Cavala $5,000 upon the alleged express understanding that Cavala would hold said sum pending the receipt of the approval or disapproval of said agreement by said Russo, who was then residing in New York state, and that in case said Russo disapproved of said agreement Cavala would return to plaintiff said $5,000 with interest thereon. It was alleged that Russo disapproved of the contract and plaintiff demanded the return of the $5,000, which was refused. Russo was made a defendant upon the theory that as the written agreement between plaintiff and defendants Mascovich recited that said payment of $5,000 was received from Russo, an apparent interest in said sum was created in favor of Russo. Russo answered, admitting that he had no right or title to the money in question.

There appears to be no dispute about the facts surrounding the making of the contract between the parties and the payment of the money by plaintiff as alleged. The contract involved was introduced in evidence and provides that the sale "is subject to the approval of Mr. A. Wm. Russo of New York." The controversy narrows down, as conceded by both appellant and respondents, to a question of whether or not Russo did in fact approve of the contract made on his

behalf, thereby entitling the defendant Cavala to apply the $5,000 as the initial payment under the contract. Upon this decisive question of fact the trial court found that Russo approved the said sale and the execution of the said agreement of sale and the payment of the said sum of $5,000 so made by plaintiff. This finding is the point of attack by appellant, and a review of the same requires a consideration of all the evidence.

It appears that plaintiff, defendant Russo, one Horace B. Lanza, and the sons of plaintiff, designated in the record as the "Teresi boys" entered into an agreement among themselves to purchase the Mascovich ranch. Plaintiff was to own a one-fourth interest, Russo one-fourth, Lanza one-fourth, and the remaining one-fourth was to be held by the "Teresi boys." The property was visited and examined and negotiations entered into for its purchase. Mascovich asked $135,000 for the property and Russo offered $132,500. At this point a sharp conflict occurs in the testimony, Russo claiming that his offer of $132,500 was conditioned upon an oral promise of Cavala to him that Cavala, who was a real estate dealer, would give $2,500 of his commission to the purchasers which would make the price $130,000 net to them—while Cavala testified that Russo offered $132,500, which Mascovich refused, and that, thereupon, he, Cavala, offered to give up $2,500 of his commission which would make the price $132,500 net to the purchasers and would meet the offer of Russo. In our review of a finding made upon conflicting evidence, we must accept as true the testimony which will support the finding, and so, for the purposes of this appeal, it must be considered that Russo offered $132,500 net, with the understanding that Cavala would surrender $2,500 of his commission, thus meeting the price demanded by Mascovich. These negotiations took place on December 17, 1919, and on the same evening Russo and Lanza left for New York and the matter of purchasing the ranch was entrusted to the plaintiff. Two days later the agreement involved here was signed by plaintiff as agent for Russo, the agreement on its face being between Russo and the owners of the land. This agreement recited a purchase price of $135,000. Between Mascovich, Cavala and plaintiff there was no dispute about the price of the land—the buyers were to pay $132,500 net; they were to pay Mascovich

$135,000, but Cavala was to return to them $2,500 of his commission for making the sale.

Before leaving for the east, Russo had approved of all terms of the contract except the price for the land and that matter required his approval after he arrived at his home in New York. Accordingly, Cavala sent a telegram to Russo, signing the same with the name of Teresi. That telegram was dated December 20, 1919, and read:

"Have deposited five thousand dollars and contract duly signed for S. J. Mascovich ranch which you seen, price and terms as per your offer any further instructions send night letter.

"S. TERESI."

Bearing in mind that this court must accept as true the testimony to the effect that Russo had offered $132,500 net for the ranch in addition to which Cavala was to rebate $2,500 from his commission to satisfy the seller, Russo must be held to have been informed by this telegram that the contract would insure the purchase of the ranch by him and his associates at $132,500 net to them. Mr. Russo arrived at his home on December 24, 1919, and telegraphed Teresi as follows:

"Just arrived telegram received will write instructions tomorrow.

"A. WILLIAM RUSSO."

However, Mr. Russo was suddenly called to Philadelphia by the illness of a business associate and remained there for several days. In the meantime Mr. Teresi had written to Russo fully, explaining that the contract had been signed and that it provided for a payment of $135,000 because the seller could not be induced to take less for the property, but that Cavala had agreed to return to the purchasers $2,500 of his commission, thus making the ranch $132,500 net to the purchasers, as per Russo's previous offer. In Mr. Russo's absence this letter was read by Lanza, a brother-in-law and business associate of Russo, and also an associate in the particular venture of the purchase of this ranch. In response to this letter, Mr. Lanza telegraphed to plaintiff, on December 29th, as follows:

"Letter received. What you did is satisfactory. Happy New Year.

"H. O. LANZA."

It is true that Lanza testified he sent this telegram on his own initiative and that it was only intended to apply to his interest in the transaction and that he had no authority to approve the contract for Russo, and Russo maintains the same position. We shall not consider this telegram, therefore, as supporting the finding regarding Russo's approval of the contract. But irrespective of this telegram, on January 4, 1920, Russo, learning the contents of Teresi's letter regarding the purchase of the ranch, wrote to him, in part, as follows:

"I have received your letter regarding the ranch and notice the contents, but its very true I did offer 132 thousand five hundred and not 135 thousand and according to the telegram that you send me on Dec. 20 which read as follows: Have deposit five thousand and contract duly signed for S. J. Mascovich ranch, which you seen, price and terms as per your offer any further instructions send night letter.

"Now Mr. Teresi you see according to this telegram we take it for granted that the deal was closed on Dec. 20 and price is $132,500 and if your portion of your commission was $2,500 or that bring it down to the price of $130,000 and if this is not it, then some one as work you.

"My brother in law did not know anything about this telegram and now he feel some what disappoint to find such a chance. He or I expect to in California on or about Feb. 1 and will bring with us the balance of the $30,000 to fulfill our promise but we like to see a good clean deal.

"Kindly write and let us know all particular."

The above letter is not free from ambiguity and more than one construction thereof might be urged with reason. Our inquiry, however, is as to whether or not the construction placed upon this letter by the trial court was one of which it was susceptible. In this connection, it must be borne in mind that one of the Teresi boys was employed by Cavala in his real estate business and had worked upon the sale of this property and would have been entitled to some commission therefor, the amount of which does not appear in the record. Mr. Russo states: "We take it for granted that the deal was closed on Dec. 20 and price is $132,500." There is no disapproval of such a contract made on his behalf; on the contrary, it is accepted as a settled fact. The remaining portion of the sentence, "and if your portion of

your commission was $2500 or that bring it down to the price of $130,000 and if this is not it, then someone has work you,'' cannot be construed as a disapproval of the purchase at $132,500. It is, at most, a suggestion that if Teresi has not arranged for an additional commission, he has been out-witted by someone, but there is no disapproval of the con-tract for that reason. The suggestion of appellant that Russo was referring to the commission of Cavala is not per-suasive, because Russo had been fully informed by Teresi's letter that Cavala had agreed to reduce his commission by $2,500, thus making the price $132,500 net to the purchasers. As to this matter, Russo was not in doubt, and it is fair to conclude, under all the facts and circumstances appearing in the record, that Russo was merely urging Teresi not to waive his right to his commission, but this matter is not made a condition for the purchase of the property. On the contrary, Russo's letter not only accepts as a fact the pur-chase of the property at $132,500, but goes on to say that he will be in California the following month and will bring out $30,000 to meet his obligation in the transaction. Russo's associates in this purchase, including the plaintiff herein, all of whom knew him very intimately, construed this letter as an acceptance of the contract, for upon its receipt, they went to the sellers and stated to them that Russo had ap-proved of the contract and that everything was all right and secured possession of the ranch upon these representations. Mr. Mascovich stated that he would not allow plaintiff and his sons to take possession of the ranch until Mr. Russo had accepted the contract, but when they stated that they had received a letter from Russo in which he accepted the con-tract, Mascovich allowed them to take possession of the ranch and livestock and other personal property covered by the contract. They remained in possession of the property for several weeks, when Lanza came to California and after making some investigations which satisfied him that the property was not worth the purchase price agreed upon, re-pudiated the contract, plaintiff demanded back the deposit and Russo formally notified the sellers that he disapproved of the contract.

[1] The appeal involves merely one question of fact, the determination of which was reached by the trial court upon conflicting evidence and the record presents what is collo-

quially characterized as a "close" case. It is precisely in such a case that this court is bound by the findings.

The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 13, 1923.

All the Justices concurred.